UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

————————————————

In re:

JACQUELYN MARIE BERK,                           Case No. DG 17-04498
                                                Chapter 13
              Debtor.                           Hon. Scott W. Dales

——————————————————————————/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

The court dismissed the chapter 13 case of debtor Jacquelyn Marie Berk (the "Debtor") on March 18, 2020 in reliance on an affidavit of default attesting to the Debtor's failure to meet the "proof of payment deadline" prescribed in the Order Adjourning Motion to Dismiss (ECF No. 73, the "Adjournment Order").

The next day the Debtor timely filed a Motion to Vacate Order Dismissing Case (ECF No. 79, the "Motion"), which drew an objection from the chapter 13 trustee (the "Trustee"). The court held a hearing to consider the Motion on April 1, 2020, by telephone. The Trustee and the Debtor both appeared through counsel and offered argument but not evidence. At the conclusion of the hearing, the court took the matter under advisement.

As a condition of a further adjournment of the March 4, 2020 hearing on the Trustee's motion to dismiss (the third adjournment and the Trustee's fourth such motion) the Adjournment Order required the Debtor to "provide proof of payment of $208.00 to be received by the Trustee no later than 5:00 p.m. on March 16, 2020," and authorized the court to dismiss the case on the affidavit of the Trustee if he did not timely receive proof of payment. Neither the payment, nor proof of the payment, arrived in time. Instead, on March 17, 2020, the Trustee filed the affidavit

of default (ECF No. 76, the "Default Affidavit") with a proposed order, and the court signed the order dismissing her case (ECF No. 78, the "Dismissal Order") the next day -- the day the Trustee received the payment.

In her Motion, the Debtor relies on Rule 9024 and 60(b)(1).[1]  She does not argue that the court erred in entering the Adjournment Order or the Dismissal Order.  Nor does she contend the Trustee's Default Affidavit is somehow inaccurate or deficient.  Instead, she argues that her failure to comply with the March 16, 2020 deadline constitutes excusable neglect because she attempted to comply by placing the required $208.00 payment in the mail on the day after she received her monthly Social Security income payment and reasonably assumed it would be delivered by the March 16, 2020 deadline.  These historical facts are not in dispute, only whether they amount to "excusable neglect" under Rule 60(b)(1).

The Supreme Court teaches that the term "excusable neglect" under Rule 60(b)(1) includes situations in which the failure to comply with a filing deadline is attributable to negligence. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 394 (1993). Under *Pioneer*, whether the "neglect" is excusable involves an equitable determination that takes into account (1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith. *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001).  In making its decision under Rule 60, the court always keeps in mind the underlying policy of protecting the finality of court judgments, and in doing so, the court has discretion to grant or withhold relief.  After

---

[1] The court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to identify the intended reference.  Rule 9024 incorporates Rule 60 into bankruptcy practice.  In addition, unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

considering these factors, the court will not excuse the Debtor's neglect in meeting the March 16, 2020 deadline.

The length of the delay in meeting the deadline (one day) is short, and the court does not regard the Debtor as acting in bad faith (despite the Trustee's contrary view), so these factors weigh in favor of granting the Motion.

Nevertheless, the court finds other factors weightier.  As the Trustee noted during oral argument, the Adjournment Order did not require the Debtor's payment to "post" to the Trustee's system by a date certain, only that she provide *proof of payment* to the trustee. This, in itself, was an accommodation to the Debtor over provisions typically included in adjournment orders that require specified payments to "post" by a date certain.

As for the method of delivering "proof of payment," although not as convenient as sending a payment by ordinary mail, the Debtor could  have arranged for overnight delivery to the Trustee, or delivered the payment to the Trustee herself or through a friend, or at least provided some proof of mailing to the Trustee by the deadline (which likely would have prompted the Trustee to refrain from filing the Default Affidavit).  Instead, she assumed the risk of slow delivery in exchange for the convenience of sending the payment by mail.

With respect to prejudice, the reasons for entering the Adjournment Order in the first-place show that it was designed to prevent prejudice to the Trustee who had prepared on three separate occasions to argue the present dismissal motion, which the court adjourned three times.  The Adjournment Order, or more specifically the default provision, was also designed to mitigate prejudice to the Debtor's creditors in a real sense, as they rely on the Debtor's plan payments under the confirmed chapter 13 plan and have not been receiving such payments as promised, given the defaults that prompted the Trustee to file the dismissal motion (his fourth, as noted above).  The

premise of the motion to dismiss -- the debtor's failure to make payments under a confirmed plan for months -- is not in dispute and, as the Trustee notes in his opposition, even if the court sets aside the Dismissal Order, the Debtor will still be behind in making approximately six months of plan payments.  The Adjournment Order was designed to bring the Debtor's payment delays to an end, and the Dismissal Order returned valuable rights to the Debtor's creditors who have been enjoined from exercising these rights since September 27, 2017 on the promise of payment under a plan the Debtor proposed.

Similarly, the court is troubled by the practical and legal implications of setting aside the Dismissal Order.  The order has already been served on the Debtor's creditors, at least some of whom, it is reasonable to assume, are preparing to resume collection activity.  Receiving another order from the court that effectively reads, "never mind," is likely to confuse them.  Moreover, setting aside the Dismissal Order will have uncertain impact on various statutory events tied to dismissal, such as the re-vesting of estate property under § 349(b), and termination of the automatic stay under § 362(c)(2)(B).  The Debtor asks the court to "vacate" the Dismissal Order, presumably implying that the court and others should treat it as if it never happened, but after the recent decision of the Supreme Court in the Puerto Rico insolvency proceeding, it is not entirely clear that the court has authority to grant *nunc pro tunc* relief  under the circumstances, or at least the court must hesitate before doing so.  *See* R*oman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, No. 18-921, 2020 WL 871715 (U.S. Feb. 24, 2020) ("*[n]unc pro tunc* orders are not some Orwellian vehicle for revisionist history -- creating 'facts' that never occurred in fact.").

Even if the court has the authority to unwind the effects of the Dismissal Order through vacatur, it would not be inclined to do so.  Conditional adjournments, such as the one memorialized

in the Adjournment Order, are a useful docket management tool in an area of practice in which adjournments are frequent and susceptible to abuse. The efficacy of such orders depends almost entirely on the court's willingness to enforce them, and when the court does enter them, it typically does so after several adjournments (as here) and with the understanding that the debtor and counsel are assuming the risk of default.

For the foregoing reasons, the court does not regard the Debtor's default under the Adjournment Order as the product of excusable neglect. Of course, nothing in this opinion should be construed to preclude the Debtor from filing another voluntary petition with this court, if so advised.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor, the Trustee, and all parties appearing on the Debtor's mailing matrix.

END OF ORDER

**IT IS SO ORDERED.**

Dated April 2, 2020



Scott W. Dales
United States Bankruptcy Judge